## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

No. 5:11-CV-569-FL

| | |
|---|---|
| LOURDES RIVERA, | ) |
| | ) |
| Plaintiff/Claimant, | ) |
| | ) |
| | ) **MEMORANDUM AND** |
| v. | ) **RECOMMENDATION** |
| | ) |
| MICHAEL J. ASTRUE, Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant. | ) |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-27, DE-33] pursuant to Fed. R. Civ. P. 12(c). Claimant Lourdes Rivera ("Claimant") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of her application for a period of disability and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this court recommends granting Claimant's Motion for Judgment on the Pleadings, denying Defendant's Motion for Judgment on the Pleadings and remanding the case to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

### STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and SSI on July 24, 2008, alleging disability beginning June 4, 2008. (R. 21). Her claim was denied initially and upon reconsideration. (R. 21). A hearing before the Administrative Law Judge ("ALJ") was held on May 14, 2010, at which Claimant was represented by counsel and a vocational expert ("VE") appeared

and testified. (R. 21). On June 28, 2010, the ALJ issued a decision denying Claimant's request for benefits. (R. 18-30). Claimant then requested a review of the ALJ's decision by the Appeals Council (R. 15), and submitted additional evidence as part of her request. (R. 4, 220-234, 654-724). After reviewing and incorporating the additional evidence into the record, the Appeals Council denied Claimant's request for review on August 20, 2011. (R. 1-5). Claimant then filed a complaint in this court seeking review of the now final administrative decision. [DE-6].

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in

2

crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 416.920a(e)(3).

In this case, Claimant alleges the following errors by the ALJ: (1) improper evaluation of Claimant's credibility; (2) improper RFC assessment; and (3) improper evaluation of medical opinions. Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s Mem.") [DE-28] at 11-18.

3

# FACTUAL HISTORY

## I.    ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 23). Next, the ALJ determined Claimant had the following severe impairments: degenerative disc disease, herniated discs and depression. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild restriction in her activities of daily living, moderate difficulties in social functioning and concentration, persistence and pace, and no episodes of decompensation. (R. 24).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform unskilled sedentary work[1] requiring the a sit/stand option with the opportunity to alternate every 30 minutes. (R. 24). The ALJ also identified that Claimant can do only frequent postural activities with no climbing and she should avoid hazards. (R. 24). In making this

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 416.967(a); Soc. Sec. Ruling ("S.S.R.") 96-9p, 1996 SSR LEXIS 6, at *8, 1996 WL 374185, at *3. "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. "Sitting" generally totals about 6 hours of an 8-hour workday. S.S.R. 96-9p, 1996 SSR LEXIS 6, at *8-9, 1996 WL 374185, at *3. A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. § 404, Subpt. P, App. 2, Table 1. *Id.*

4

assessment, the ALJ found Claimant's statements about her limitations not fully credible. (R. 24-28).

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as a cafeteria cook. (R. 28-29). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 29).

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 44 years old and unemployed. (R. 35, 37). Claimant is a high school graduate and completed one year of college. (R. 36). Claimant was last employed with the Polk County public school system for approximately 10 months, in the school year beginning 2007 and ending 2008. (R. 37). Her duties included working in the school kitchen as a cafeteria worker. (R. 37). Claimant has no other past work experience because she worked at home caring for her children. (R. 38).

Claimant explained numerous medical conditions to support her disability claim and her inability to work full-time. These medical conditions include her neck and lower back pain which radiates to her legs. (R. 39, 42). Claimant testified she sustained injuries in a car accident in 2005 and subsequently aggravated her injuries lifting a milk crate at work in 2008. (R. 40, 41, 55). Claimant described her pain as throbbing and testified that she must lie down during the day for at least two to three hours and that the pain causes problems sleeping at night. (R. 42, 43). Claimant also testified that she experiences pain when she is sitting down and standing, and that often she must lift one leg while standing to relieve the pain. (R. 42, 44). Claimant testified that due to her pain she could stand in place for only 15 minutes. (R. 44). Claimant walks around her home during

5

the day to exercise for about 10 minutes. (R. 44). Claimant testified she does not use a walker or any assistive device for support and has never fallen. (R. 45). Claimant testified her hands are numb from a pinched nerve in her neck. (R. 45). Claimant testified she can read magazines and books and is able to turn the pages, but her hands get numb. (R. 45). Claimant testified that occasionally she has dropped books and magazines. (R. 46). Claimant also testified she cannot reach above her head to retrieve items from a shelf. (R. 46). Claimant testified that she does not drive anymore due to the pain in her legs and that her son takes her to doctor appointments. (R. 47). Claimant testified she has difficultly dressing and bathing herself and does not clean or cook meals. (R. 47). Claimant testified that she is taking pain medications twice a day and that the medications eliminate her pain to some degree, but they upset her stomach. (R. 48). Sometimes the medications make Claimant sleepy and groggy and make it difficult for Claimant to think and maintain focus for more than five minutes. (R. 49, 50). Claimant is also receiving epidural steroid injections to help alleviate her back pain, but Claimant testified the injections do not provide relief. (R. 51, 55).

Claimant testified that she is also unable to work due to her depression and panic attacks. (R. 52). Claimant testified she experiences spontaneous panic attacks that last for about 15 minutes. (R. 52). Claimant testified she experiences crying spells as often as every other day, and that as a result Claimant locks herself in her bedroom. (R. 53). Claimant testified her sister lives next door and she attends church with her. (R. 54). The church service usually lasts two to three hours and Claimant gets up during the service multiple times to use the restroom. (R. 54, 56).

## III.   Vocational Expert's Testimony at the Administrative Hearing

Ms. Sawyer-Little testified as a vocational expert ("VE") at the administrative hearing. (R. 56-59). After the VE's testimony regarding Claimant's past work experience of medium work, the

6

ALJ asked if Claimant had any transferable skills to light or sedentary work. (R. 57). The VE testified there would be jobs in light work such as a short order cook, but nothing in sedentary work. (R. 57). Next, the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant and posed hypothetical questions. First, the ALJ asked the VE if positions would be available for the hypothetical individual assuming the hypothetical individual is limited to sedentary work, requires the option to sit or stand at will every 30 minutes, can do only frequent postural activities such as balancing, stooping, kneeling, crouching or crawling with no climbing, and no exposure to hazardous conditions. (R. 57). The VE testified that jobs existed in the national and regional economies which the hypothetical individual could perform, including the following: (1) food checker (DOT #211.482-014); (2) parking lot attendant (DOT #915.473-010); and (3) charge account clerk (DOT #205.367-014). (R. 57). Second, the ALJ asked the VE if positions would be available if the hypothetical individual had difficulty concentrating and staying on task for more than an hour at a time. (R. 58). The VE testified in the negative. (R. 58). When asked by Claimant's counsel whether jobs listed would allow the hypothetical individual to elevate their legs to waist level for 50 percent of the work day, the VE responded that the hypothetical individual would not be able to perform the listed jobs. (R. 58). When asked by Claimant's counsel whether absence from work three days or more per month would allow the hypothetical individual to perform the listed work, the VE responded in the negative. (R. 58-59). The VE testified in the negative when asked if the hypothetical individual would be able to perform any of the listed jobs if the hypothetical individual needed to take a 10 to 15 minute break every hour to walk. (R. 59).

7

## DISCUSSION

## I. The ALJ properly evaluated Claimant's credibility.

Claimant contends the record does not support the ALJ's finding that Claimant's testimony was not credible. Pl.'s Mem. at 13. This court disagrees.

This court is not permitted to make credibility assessments, but must determine if the ALJ's credibility assessment is supported by substantial evidence. *Craig*, 76 F.3d at 589. The ALJ's assessment involves a two-step process. First, as an objective matter, the ALJ must determine whether Claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.* at 594; *see also* Soc. Sec. Rul. ("S.S.R.") 96-7p, 1996 SSR LEXIS 4, at *1-2, 1996 WL 374186, at *1. If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of that pain, and the extent to which it affects a claimant's ability to work. *Id.* at 595. The step two inquiry considers "all available evidence," including a claimant's statements about his pain, medical history, medical signs, laboratory findings, any objective medical evidence of pain, evidence of a claimant's daily activities, specific descriptions of pain, any medical treatment taken to alleviate the pain and "any other evidence relevant to the severity of the impairment." *Id.*; *see also* 20 C.F.R. § 416.929(c)(3); S.S.R. 96-7p, 1996 SSR LEXIS 4, at *6, 1996 WL 374186, at *3. Objective evidence of pain is not required for entitlement to benefits, although it is appropriately considered where it appears in the record. *See id.* at 595-96.

First, Claimant contends the ALJ, in reaching his determination, discussed only evidence supporting his credibility decision. Pl.'s Mem. at 12-13. While it is not the province of this court to weigh the evidence considered by the ALJ, the court must consider whether the ALJ considered and analyzed all relevant evidence. *See Sterling Smokeless*, 131 F.3d at 439-40. The ALJ may not

8

select and discuss only that evidence that favors his ultimate conclusion. *See Loza v. Apfel*, 219 F.3d 378 (5th Cir. 2000) (explaining the ALJ "cannot 'pick and choose' only the evidence that supports his position"); *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("In addition to discussing the evidence supporting his decision in a social security disability benefits case, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."). Here, Claimant's description of her back condition and resulting pain and limitations is at least partially supported by the objective evidence and the record indicates that the ALJ properly discussed evidence weighing against his credibility decision; not simply evidence supportive of his ultimate determination. Contrary to Claimant's contention that the ALJ ignored evidence not supportive of his determination, the ALJ discussed the following: (1) Claimant was assessed with cervical radiculopathy, disc herniation compressing the thecal sac, and mild bilateral carpal tunnel syndrome in 2005 (R. 25, 238); (2) Claimant reported lower back pain radiating down extremities (R. 25, 235); (3) Claimant had clear injuries to her spine (R. 25, 258); (4) Claimant had moderate climbing restrictions and severe restrictions for squatting and bending (R. 25, 260); (5) Claimant had chronic pain syndrome, low back pain, cervicalgia and sacroilitis in 2009 (R. 26, 504); (6) Claimant can stand for 15 minutes, walk for 10 minutes and then must lie down (R. 27, 43, 44); and (7) Claimant is unable to do household chores and suffers from panic attacks (R. 27, 47, 48, 52). The ALJ's discussion at step four is not an example of the ALJ conclusively stating an opinion without discussing evidence upon which the Claimant relies. In fact, the ALJ's discussion adequately summarized the medical records weighing against his ultimate credibility finding and the ALJ adequately summarized Claimant's testimony regarding her subjective complaints of pain and limitations. The ALJ's analysis tracked Claimant's back condition and continued prognosis

9

regarding pain over the years, along with Claimant's mental health condition. The ALJ recognized the presence of pain and the relevant diagnoses, yet ultimately determined them to not be as limiting as the Claimant asserts. The ALJ adequately discussed all evidence in his decision.

Additionally, Claimant contends that the ALJ's credibility determination is not supported by substantial evidence. Pl.'s Mem. at 11-12. With respect to Claimant's back conditions and mental conditions, the ALJ noted the following: (1) Dr. Koeleveld's conclusion of Claimant's treatment regimen was that there was no need to consider surgery and instead recommended physical therapy in 2008 (R. 26, 354); (2) physical therapy records indicate Claimant made good gains in diminishing lumbar radicular symptoms and was able to tolerate longer periods of sitting in 2008 (R. 26, 372); (3) Claimant's back appeared normal, was non-tender to the touch and Claimant was able to move her extremities equally in 2008 (R. 26, 27, 28, 444, 445); (4) Claimant's mental health problems could be managed with medication and counseling appointments in 2009 and, in fact, Claimant was only taking medication for anxiety once a month (R. 26, 500); and (5) Claimant received good pain relief from her steroid injections and medications in 2010. (R. 28, 640); *see Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling."); *Farrior v. Astrue*, No. 7:10-CV-164-FL, 2011 U.S. Dist. LEXIS 81863, at *14, 2011 WL 3157150, at *5 (E.D.N.C. July 26, 2011) (holding an ALJ may consider the type of treatment received in evaluating a claimant's subjective complaints). Here, the ALJ properly considered the treatment Claimant was undergoing and its effectiveness in remedying symptoms. The ALJ also relied on the opinion of Ms. Kleinberg at WakeMed Outpatient Rehab which stated that Claimant could perform sedentary work. (R. 27, 557). Moreover, the ALJ's decision that Claimant is no longer capable of performing medium work similar to her last work and

10

instead can perform only unskilled sedentary work reflects that the credibility he afforded Claimant's subjective statements about her pain was not unfounded. (R. 24, 57). The RFC finding indicates the ALJ meshed Claimant's complaints with the medical records when he determined Claimant's capacity for sedentary work. The RFC determination included the specific limitations of a sit/stand option every 30 minutes and only frequent postural activities with no climbing. (R. 24). Thus, the ALJ found Claimant's testimony credible to some degree in light of these findings, simply not to the degree Claimant asserts the ALJ should have found.

To the extent that the ALJ detailed the relevant facts underlying his finding that Claimant's testimony was not fully credible, his credibility finding is entitled to substantial deference. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (noting an ALJ's observations regarding credibility should be given great weight). Here, the ALJ comported fully with the credibility evaluation prescribed by SSR 96-7p by making findings, supported by reasons, with respect to Claimant's alleged symptoms, the medical record and Claimant's own testimony. While Claimant may disagree with the manner in which the ALJ took account of this evidence, this court cannot re-weigh the evidence. *See Mastro*, 270 F.3d at 176. For the foregoing reasons, Claimant's credibility argument is without merit.

## II. The ALJ properly assessed Claimant's RFC.

Claimant contends the ALJ failed to accurately describe Claimant's RFC because the ALJ failed to discuss the effects of Claimant's radiculopathy, bilateral carpal tunnel syndrome and her medication side effects." Pl.'s Mem. at 15, 16. This court disagrees.

An individual's RFC is defined as that capacity which an individual possesses despite the limitations caused by his physical or mental impairments. 20 C.F.R. § 416.945(a)(1); *see also* S.S.R.

11

96-8p, 1996 SSR LEXIS 5, at \*5, 1996 WL 374184, at \*1. The RFC assessment is based on all the relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 SSR LEXIS 5, at \*14, 1996 WL 374184, at \*5. When a claimant has a number of impairments, including those deemed not severe, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) (citations omitted) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments."). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 SSR LEXIS 5, at \*21, 1996 WL 374184, at \*7. Furthermore, the RFC assessment must "consider and address medical source opinions," and if it "conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." S.S.R. 96-8p, 1996 SSR LEXIS 5, at \*20, 1996 WL 374184, at \*7.

Claimant's argument regarding the ALJ's alleged failure to consider the effects of her radiculopathy and carpal tunnel syndrome merits little discussion. The ALJ showed sufficient consideration of these conditions by acknowledging Claimant's complaints of hand numbness and the test studies showing the presence of these two conditions. (R. 25). The ALJ's opinion provides a detailed review of Claimant's medical records, citing medical facts and underlying evidence as to each impairment. (R. 25-28). The ALJ specifically mentioned the following in his discussion, giving due consideration to the conditions Claimant alleges should have been provided for in the RFC: (1) Claimant has numbness in her hands and has difficultly holding objects (R. 25, 45, 46); (2)

12

Claimant was assessed with radiculopathy and mild bilateral carpal tunnel syndrome in both the lower extremities and the upper extremities in 2005 (R. 25, 236, 238); (3) orthopedic examination revealed Claimant had mild restrictions in fine motor activity of the left hand (R. 25, 260); (4) Claimant reported paresthesias in the hands (R. 25, 353); and (5) Claimant enjoyed diminishing lumbar radicular symptoms as a result of physical therapy in 2008. (R. 26, 371). While Claimant faults the ALJ for not including a restriction limiting the use of her extremities as a result of the carpal tunnel syndrome and radiculopathy, Claimant cites no evidence warranting such a restriction. The evidence before the ALJ provided no restrictions regarding the use of Claimant's extremities as the three physical RFC assessments performed between 2006 and 2009 fail to indicate any manipulative limitations. (R. 326, 465, 526). Additionally, the physical therapy reports reviewed by the ALJ and discussed in his opinion, specifically the discharge summary on September 18, 2008, indicates that Claimant's pain regarding radiculopathy was less than one (on a scale of one to ten) for 95 percent of the time and that her hand numbness had diminished to allow Claimant to drive at least ten minutes at a time. (R. 371). Further, the physical therapy report indicated that Claimant quickly reduced her radicular symptoms and met her physical therapy goals. (R. 371). The physical therapy visit on September 12, 2008, just prior to discharge, indicated that Claimant had made gains in eliminating her radicular symptoms and only needed a few more visits to ensure independence before transitioning to a home program to prevent recurrence. (R. 372). Further evidence from the record in 2009 shows the ALJ adequately considered Claimant's hand issues by assigning an RFC of *unskilled* sedentary work because he gave significant weight to the opinion in the "Modified Functional Capacity Evaluation" completed by Jill Kleinberg to the extent the opinion concluded Claimant could perform sedentary work. (R. 28, 557). This evaluation specifically considered

13

Claimant's grip ability and fine motor skills which dealt directly with Claimant's hands. (R. 28, 556, 557). Thus, the ALJ's RFC assessment takes account of Claimant's testimony concerning pain and numbness from radiculopathy and carpal tunnel syndrome to the extent that this testimony proved consistent with the objective medical evidence before the ALJ. *See Hines v. Barnhart*, 453 F.3d 559, 565 n.3 (4th Cir. 2006).

With respect to Claimant's alleged medication side effects, the ALJ did not discuss Claimant's testimony that she was sometimes groggy or nauseated from medications and Claimant contends that the ALJ failed to comply with SSR 96-7p and SSR 96-8p. Pl.'s Mem. at 16. SSR 96-7 requires the ALJ to consider the side effects of any medication an individual takes to alleviate pain or other symptoms in assessing the credibility of claimant's statements about pain or other symptoms and their functional effects. S.S.R. 96-7p, 1996 SSR LEXIS 4, at *8, 1996 WL 374186, at *3. Finally, SSR 96-8p requires the ALJ consider all the evidence in the record when making a RFC determination, including the side effects of medications the claimant is taking. S.S.R. 96-8p, 1996 SSR LEXIS 5, at *13-14, 1996 WL 374184, at *5. Claimant, however, fails to specify how side effects limited her ability to work, and review of the record does not reflect that any further discussion was warranted by the ALJ. Importantly, "an ALJ need not discuss each piece of available evidence, but instead may limit the written explanation to material matters." *Hancock v. Astrue*, No. 1:09-CV-87, 2012 U.S. Dist. LEXIS 52697, at *27, 2012 WL 1267888, at *9 (M.D.N.C. Apr. 16, 2012) . The record indicates that Claimant changed or discontinued medications due to the groggy side effects (R. 639, 642) and there is nothing in the record suggesting that the side effects of Claimant's medications limited her capacity to work beyond the limitations imposed by the ALJ in his RFC determination. *See Smith v. Astrue*, No. 1:11-CV-300, 2012 U.S. Dist. LEXIS 108760, at

14

*16, 2012 WL 3155621, at *5 (W.D.N.C. June 29, 2012) (recognizing that without an indication that medications are imposing further limitation, there is no error). Thus, a discussion by the ALJ of medication side effects would be immaterial. Additionally, drowsiness often occurs with the taking of medication and cannot be viewed as disabling unless the record shows serious limitation resulting to the Claimant which is not present here. *See Hancock*, 2012 U.S. Dist. LEXIS 52697, at *27, 2012 WL 1267888, at *9 (citing *Burns v. Barnhart*, 312 F.3d 113, 131 (3d Cir. 2002)). The ALJ also did not find Claimant's testimony fully credible in light of the treatment notes. (R. 27). Accordingly, the court finds that remand is not required for the ALJ's failure to consider the side effects of Claimant's medications.

Based on the foregoing, this court finds that the ALJ's RFC determination is supported by substantial evidence. The ALJ analyzed all of the relevant evidence, sufficiently explained his findings and applied the correct legal standards in evaluating Claimant's RFC. Accordingly, Claimant's argument as to this issue is without merit.

**III. The ALJ erred by failing to give weight assignments to various medical opinions.**

Claimant asserts that the ALJ improperly evaluated the medical opinions in this case. Pl.'s Mem. at 16-18. Specifically, Claimant asserts that the ALJ failed to consider the opinions of Drs. Lorensen and Zimmerman and improperly weighed to the opinions he considered, including Dr. Kim, Ms. Kleinberg, and Dr. Koeleveld. *Id.* This court agrees in part.

The ALJ is required to "evaluate every medical opinion" received in the record. 20 C.F.R. § 416.927(c); *see also* S.S.R. 96-8p, 1996 SSR LEXIS 5, at *20, 1996 WL 374184, at *7 (stating the RFC assessment must always consider and address medical source opinions). Pursuant to 20 C.F.R. § 416.927(e)(2)(ii), the ALJ is required to "explain in the decision the weight given to . . . any

15

opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for [the Social Security Administration]." Medical opinions include "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of . . . impairments(s), including . . . symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairments(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). "Acceptable medical sources" are defined as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 416.913(a); *see also* S.S.R. 06-03p, 2006 SSR LEXIS 5, at *2-3, 2006 WL 2329939, at *1. However, "[i]n addition to evidence from the acceptable medical sources listed . . . we *may* also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work." 20 C.F.R. § 416.913(d) (emphasis added). Nurse-practitioners, physicians' assistants and therapists are included on this list as medical sources who are not "acceptable medical sources." *Id.*

In addition, the ALJ is required to "give good reasons in [his] . . . decision for the weight [given a claimant's] treating source's opinion." 20 C.F.R. § 416.927(c)(2). The ALJ must generally give more weight to the opinion of a treating physician because that doctor is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. 20 C.F.R. § 416.927(d)(2). However, though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590. In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.*; *see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the

16

testimony of a treating physician if there is persuasive contrary evidence"); *Mastro*, 270 F.3d at 178 (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted); *Wireman v. Barnhart*, No. 2:05-CV-46, 2006 U.S. Dist. LEXIS 62868, at \*23, 2006 WL 2565245, at \*8 (W.D. Va. Sept. 5, 2006) (stating an ALJ "may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source . . . if he sufficiently explains his rationale and if the record supports his findings").

When the ALJ does not give the opinion of a treating physician controlling weight, the ALJ must weigh the opinion pursuant to the following non-exclusive list: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship between the physician and the claimant; (3) the supportability of the physician's opinion; (4) the consistency of the opinion with the record; and (5) whether the physician is a specialist. 20 C.F.R. § 416.927(c)(2)-(6); *see also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). Moreover, the ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by substantial evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." S.S.R. 96-2p, 1996 SSR LEXIS 9, at \*12, 1996 WL 374188, at \*5. "This does not entail that the ALJ must expressly set forth factor-by-factor analysis of each of the considerations listed above in every ruling that bears on the weight given to a medical opinion." *Warren v. Astrue*, No. 5:08-CV-149, 2009 U.S. Dist. LEXIS 41852, at \*7-8, 2009 WL 1392898, at \*3 (E.D.N.C. May 18, 2009). However, "[i]f the ALJ does not assign weight and give good reasons for that assignment, then the court is ill-equipped to determine whether the ALJ's conclusions is substantially supported by evidence of record." *Mitchell v. Comm'r of Social*

17

*Security*, No. 2:08-CV-513, 2009 U.S. Dist. LEXIS 123830, at *39 (E.D. Va. Dec. 15, 2009) (citing *Gordon v. Schweiker*, 725 F.2d 231, 235-36 (4th Cir. 1984)). "If the ALJ fails to provide reasons for his weight determination, then this Court cannot and should not infer from the record reasons to support the ALJ's conclusion." *Id.* (citing *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004)).

    a. The ALJ failed to assign weight to relevant medical opinions

    In the instant case, the ALJ stated that he gave "careful consideration of the entire record" (R. 24) and his decision mentioned the records of at least nine different medical sources. However, the ALJ only assigned weight determinations to the opinions expressed by Dr. Kim, Ms. Kleinberg, a physical therapist, and Ms. Rayburn, a mental health professional. The ALJ failed to assign weight to the opinions expressed by the other physicians regarding Claimant's impairments as required under the applicable regulations. Specifically, the ALJ did not give weight assignments to Drs. Lorensen, Koeleveld, Duskin and Wadley. Additionally, the ALJ failed to discuss Dr. Zimmerman's treatment notes in his decision. (R. 24-28, 346-347); *see* 20 C.F.R. § 416.927(c) (recognizing that every medical opinion received will be evaluated). Claimant only appears to contest the failure of the ALJ to consider Drs. Lorensen and Zimmerman's opinions, but to the extent that the sources contain a "statement[] from [a] physician[] . . . or other acceptable medical source[] that reflect[s] judgment[] about the nature and severity of [Claimant's] impairment(s)," the ALJ was required to explain the weight given to these sources. 20 C.F.R. § 416.927(a)(2).

    The ALJ did not give a weight assignment to the following medical opinions, all of which were discussed to some degree in the ALJ's decision: (1) Dr. Lorensen's August 2006 opinion that

18

the Claimant had moderate restrictions for ambulating and climbing stairs, severe restrictions for squatting, bending, rotating, and extending and mild restrictions in fine motor activity of the left hand (R. 25); (2) Dr. Koeleveld's July 2008 opinion assessing cervical spondylosis, small disc herniation, mild degenerative kyphosis and concluding no surgery was necessary, but recommending physical therapy (R. 25, 26); (3) the opinion of Dr. Duskin, a nonexamining psychological consultant, that Claimant's mood disorder and panic attacks resulted only in mild limitations in daily living and social functioning, moderate limitations in concentration, persistence, and pace with no decompensation (R. 26); and (4) Dr. Wadley's early 2010 opinion that Claimant had a normal gait with full bilateral motor strength and that Claimant had received good relief from steroid injections. (R. 28). As mentioned, the ALJ's decision fails to discuss the treatment notes of Dr. Zimmerman and did not give a weight assignment.

While the ALJ did discuss relevant evidence contained in the medical records, he did not explicitly indicate the weight given to the above medical opinions. A discussion of the evidence, without an affirmative statement indicating the weight afforded these opinion, prevents this court from understanding how the evidence factored into the ALJ's analysis and final decision. Thus, the ALJ's failure to assign weight to multiple medical opinions of Claimant's physicians precludes a determination that the ALJ's decision was based on substantial evidence. *See Gordon*, 725 F.2d at 235 ("We cannot determine if findings are unsupported by substantial evidence unless the [ALJ] explicitly indicates the weight given to all of the relevant evidence.").

19

b. The ALJ adequately explained the weight given to the opinions of Dr. Kim, Ms. Kleinberg, and Ms. Rayburn[2]

For those opinions to which the ALJ assigned specific weight, the ALJ adequately explained the reasons for his weight assignments as required by the applicable regulations.[3] The ALJ indicated in his decision that he gave "little weight" to Dr. Kim's findings and Ms. Kleinberg's findings regarding Claimant's limitations. (R. 28). Dr. Kim's opinion of Claimant's limitations is that Claimant would be absent from work two times per month. (R. 27, 561). Ms. Kleinberg found that the Claimant could only perform work at the low end of the sedentary category. (R. 27, 557). The ALJ explained that he assigned "little weight" to these opinions because the findings were not "supported by the totality of the evidence of record." (R. 28). The ALJ specifically cited other evidence in the record that he believed inconsistent with the opinions of Dr. Kim and Ms. Kleinberg, including the following: (1) that physical therapy could appropriately manage Claimant's condition (R. 354); (2) that Claimant's gait and bilateral motor strength were normal (R. 639, 641); and (3) that Claimant received good relief from steroid injections and other medications. (R. 28, 640). Further, the ALJ indicated that he gave "little weight" to the opinion of Ms. Rayburn stating that Claimant would be absent from work more than three times per month. (R. 28). The ALJ gave sufficient reasons for the weight he assigned Ms. Rayburn's opinion. The ALJ stated Ms. Rayburn's opinion

---

[2] The court notes that Ms. Kleinberg, a physical therapist, and Ms. Rayburn, a mental health professional, are not considered "acceptable medical sources" as defined by the regulations. Therefore, their opinions do not require a specific weight assignment, but the ALJ is permitted to assign weight to such other sources. 20 C.F.R. § 416.913; see also S.S.R. 06-03p, 2006 SSR LEXIS 5, at *8, *12-13, 2006 WL 2329939, at *3-5.

[3] Claimant asserts that the ALJ improperly assigned weight to Dr. Koeleveld's opinion, but the court finds that the ALJ did not make an affirmative statement explicitly indicating the weight afforded to Dr. Koeleveld's opinion. See Pl.'s Mem. at 17.

20

is inconsistent with Ms. Rayburn's own findings and proceeded to identify those inconsistent findings. (R. 28). Because the ALJ gave specific reasons in his decision for the weight given these opinions, reasons supported by substantial evidence in the record, the ALJ sufficiently explained his rationale for the weight accorded these opinions and did not err.

This court recommends this case be remanded to the ALJ with instruction, pursuant to 20 C.F.R. § 416.927, to (1) indicate explicitly the weight accorded to the medical opinions of Claimant's physicians and (2) provide appropriate explanation for the assigned weights so that the court may determine if the ALJ's decision is supported by substantial evidence.

## CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment on the Pleadings [DE-27] be GRANTED, Defendant's Motion for Judgment on the Pleadings [DE-33] be DENIED and the case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

21

Submitted, this the 3rd day of January, 2013.

_____
Robert B. Jones, Jr.
United States Magistrate Judge